UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF KEITH FRANKLIN, by
its personal representative, KAREN
FRANKLIN,

        Plaintiff,

v.

STATE OF MICHIGAN DEPARTMENT OF
CORRECTIONS-DUANE WATERS
HEALTH CENTER, DANIEL H. HEYNS,
individually and in his official capacity as the
former Director of the Michigan Department
of Corrections, CORIZON
HEALTH, INC., a subsidiary of Valitas
Health Services, Inc., JANAK R. BHAVSAR,
M.D., individually and in his official capacity,
DANIEL T. CARREL, D.O., individually and
in his official capacity, SCOTT L. HOLMES,
M.D., individually and in his official capacity,
jointly and severally,

        Defendants.

Case No. 16-13587
Honorable Laurie J. Michelson

_____

## OPINION AND ORDER DENYING DEFENDANTS'
## MOTION TO CHANGE VENUE [40]
_____

      Keith Franklin died of cancer while in the custody of the Michigan Department of
Corrections. The personal representative of his estate, his mother Karen Franklin, initiated this
prisoner civil rights action under 42 U.S.C. § 1983 in the U.S. District Court for the Eastern
District of Michigan. Some of the events giving rise to the case happened in this district, while
others happened in the Western District of Michigan. Defendants moved to transfer venue to the
Western District of Michigan under 28 U.S.C. § 1404(a). (R. 40.) For the reasons discussed
below, the Court will deny Defendants' motion.

**I.**

**A.**

What follows is a brief summary of the complaint's allegations and how those allegations relate to the Eastern or Western Districts of Michigan.

On August 6, 2012, Plaintiff's Decedent Keith Franklin was incarcerated at MDOC's Reception and Guidance Center ("RGC") in Jackson, Michigan (R.1, PID 11), which is in Jackson County and within the Eastern District of Michigan, 28 U.S.C. § 102(a)(1). While Decedent was at RGC, Defendant Dr. Janak Bhavsar conducted a medical screening and assessment to determine Decedent's medical needs and to ensure a medically safe transfer from RGC to another facility. (R. 1, PID 9, 11.) Dr. Bhavsar's report noted a "[p]alpable lymphnode" near Decedent's jaw. (R. 1, PID 12.) Plaintiff claims that Dr. Bhavsar, MDOC, and Corizon, which provides medical services for MDOC, failed to provide a constitutional level of care by not alerting Decedent to the palpable lymph node, not treating the mass, not creating a plan of care, and not doing any follow up testing. (R. 1, PID 54–55.)

A few weeks after the initial assessment, on August 24, 2012, MDOC transferred Decedent to the Carson City Correction Facility ("CCCF") (R. 1, PID 17), which is in Montcalm County in the Western District of Michigan, 28 U.S.C. § 102(b)(1). Shortly thereafter, Decedent underwent an intake medical assessment, which did not address the lymph node. (R. 1, PID 17.) Decedent allegedly spent more than a year in CCCF and had various medical examinations by individuals including Defendant Dr. Daniel Carrel before anyone inspected or reported on the lymph node again. (R. 1, PID 18–21.) An October 9, 2013 report noted the lymph node, indicating that Decedent had stated it was "5-6 times larger" than it had been a year ago. (R. 1, PID 21.) Defendant Dr. Scott Holmes examined Decedent on October 23 and created an

assessment plan. (R. 1, PID 22–23.) Finally, a neck x-ray was taken on October 30, 2013 to evaluate the mass on Decedent's neck. (R. 1, PID 23.) This x-ray was followed by a CT scan on November 22, 2013. (R. 1, PID 25.) Based on the results, an ENT consultation was requested but allegedly delayed. (R. 1, PID 25–28.) Decedent finally visited the ENT and had a biopsy on March 19, 2014, and within days it resulted in a diagnosis of tonsil and neck cancer. (R. 1, PID 30–31.) The complaint goes on to describe further medical records from subsequent treatment, including issues surrounding obtaining a PET scan, which allegedly delayed Decedent's receipt of chemotherapy. (*See*, *e.g.*, R. 1, PID 39–40.) Based on the alleged delay in diagnosing Decedent's cancer and providing Decedent chemotherapy, Plaintiff claims that MDOC, Corizon, Dr. Carrel, and Dr. Holmes failed to provide a constitutional level of care. (R. 1, PID 55.)

From June 19, 2014 to June 23, 2014, Decedent was hospitalized at McLaren Hospital for chemotherapy treatments. (R. 1, PID 41.) McLaren Hospital is located in Ingham County, which, like CCCF, is within the Western District of Michigan. 28 U.S.C. § 102(b)(1). The complaint alleges that while there, Decedent's lab results were abnormal, but Dr. Cheryl Kovalski (no longer a defendant) failed to repeat the lab work. (R. 1, PID 42.) The complaint further alleges that McLaren discharged Decedent even though "he was in a medically unstable condition." (R. 1, PID 43.) Upon discharge from McLaren on June 23, 2014, Decedent was nauseous and vomiting. (R. 1, PID 42.) But the complaint alleges that MDOC, Corizon, and McLaren failed to take any special medical precautions when Decedent returned to CCCF. (R. 1, PID 43.)

After several days of vomiting, nausea, and throat pain—the combination of which was allegedly severe enough to prevent Decedent from orally taking medication—Decedent was transferred to a hospital within RGC for hydration on June 27, 2014. (R. 1, PID 4, 44–47.) Upon Decedent's arrival at RGC—back within the Eastern District of Michigan—his condition

worsened, and the medical staff from RGC contacted Emergency Medical Services for an ambulance the next morning. (R. 1, PID 47–48.) One day after arriving at the Allegiance Emergency Room, (still in the Eastern District of Michigan), Decedent passed away. (R. 1, PID 51.) The subsequent autopsy revealed that the cause of death was the neck cancer that had been diagnosed three months prior. (R. 1, PID 51.) Plaintiff claims that in Decedent's final days, MDOC, Corizon, Carrel, and Holmes failed to respond to his deteriorating condition. (R. 1, PID 56–57.)

**B.**

Franklin, as the personal representative of Decedent's estate, filed a complaint in this Court on October 6, 2016. (R. 1.) The complaint asserts two counts under 42 U.S.C. § 1983. Count I asserts that Defendants MDOC, Corizon, and Daniel Heyns (MDOC's former director) engaged in an unconstitutional custom, policy, or practice in violation of the Eighth Amendment. Count II asserts that Defendants Dr. Bhavsar, Dr. Daniel Carrel (who treated Decedent at CCCF), Dr. Holmes, Dr. Kovalski, and McLaren Health Care Corporation were all deliberately indifferent to Decedent's serious medical need in violation of the Eighth Amendment.

On February 7, 2017, Defendants McLaren Health Care Corporation and Kovalski filed a motion to change venue to the Western District of Michigan. (R. 40.) Following the filing, McLaren and Kovalski reached agreements with the Plaintiff and were dismissed from the case. (R. 50, 59.) But the remaining defendants have either joined the motion or indicated they do not oppose it. (R. 46, 49.) After careful consideration of the briefs and thorough review of the record, the Court finds that oral argument will not aid in resolving the pending motion. *See* E.D. Mich. LR 7.1(f)(2).

## II.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). There is no dispute that this case could have been brought initially in the Western District of Michigan. (R. 48, PID 529.) Thus, the focus will be on the convenience and interest of justice factors, and district courts have "broad discretion to determine when party convenience or the interests of justice make a transfer appropriate." *Reese v. CNH Am.*, 574 F.3d 315, 320 (6th Cir. 2009) (internal quotation marks and citation omitted). The party seeking transfer must demonstrate by a preponderance of the evidence that "fairness and practicality strongly favor the forum to which transfer is sought." *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (citing *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001)).

In analyzing a motion under § 1404(a), courts generally consider the following non-exhaustive list of factors:

> (1) parties' convenience; (2) witnesses' convenience; (3) relative ease of access to sources of proof; (4) availability of process to compel attendance of unwilling witnesses; (5) cost of obtaining willing witnesses; (6) practical difficulties associated with trying the case quickly and inexpensively; and (7) interests of justice.

*Thomas*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001); *see also Reese*, 574 F.3d at 320 (affirming district court's use of those factors).

*Convenience of the parties.* "[C]ourts grant substantial deference to a plaintiff's chosen forum, especially where, as here, the plaintiff lives in [the] chosen jurisdiction." *Thomas*, 131 F. Supp. 2d at 937 (citation omitted). "A plaintiff's chosen forum, however, is not sacrosanct, and will not defeat a well-founded motion for a change of venue." *Id.* (citation omitted). In addition to the Plaintiff, at least one of the remaining Defendants, Dr. Bhavsar, also resides in the Eastern

District of Michigan. (R. 40, PID 462.) Other Defendants—Heyns, Dr. Carrel, and Dr. Holmes—reside in the Western District of Michigan. (R. 40, PID 462.) But "the Court is mindful that 'a transfer is not appropriate if the result is simply to shift the inconvenience from one party to another.'" *D'Amato*, 341 F. Supp. 2d at 751 (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002)). Moreover, the Court doubts that the remaining Western District Defendants would even suffer any significant inconvenience from the case remaining here.

As Plaintiff has pointed out, the relative differences in travel distance for each party between the Eastern District's courthouse in Detroit and the Western District's main courthouse in Grand Rapids are not great—at most some of the parties would have to travel an extra 80 or so miles if the case remains here. (*See* R. 48, PID 540–31.) Indeed, "[c]ourts generally have found [a 100-mile distance] negligible as a basis for a discretionary venue change." *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004) (citations omitted). Moreover, Defendant Daniel Heyns, as the former director of MDOC, had statewide duties. And "[a]n argument premised on inconvenience is difficult to accept when defendant[] routinely conduct[ed] business around the state and [his] advocate routinely appears in this Court." *Land*, 340 F. Supp. 2d at 809; *see also Horacek v. Burnett*, No. 07-11885, 2008 WL 623975, at *2–3 (E.D. Mich. Mar. 6, 2008) ("[W]hen a district other than the one where the state agency is headquartered has a 'substantial connection' with the claim, or where action taken in the state capitol has an effect in the other district, venue in that other district is proper"). Thus, party convenience does not favor a transfer.

*Convenience of witnesses*. The convenience of witnesses "is one of the most important factors in determining whether to grant a motion to change venue[.]" *D'Amato*, 341 F. Supp. 2d

at 750 (citing *Thomas*, 131 F. Supp. 2d at 937). When analyzing the convenience of witnesses, the residence of "key witnesses" is more important than the "raw number" of witnesses within a given district. *D'Amato*, 341 F. Supp. 2d at 750 (citing *MCNIC Oil & Gas Co. v. IBEX Res. Co.*, 23 F. Supp. 2d 729, 738–39 (E.D. Mich. 1998)). "The 'party moving for transfer for the convenience of the witnesses must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include.'" *Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc.*, No. 2:13-CV-12136, 2013 WL 6017977, at *2 (E.D. Mich. Nov. 13, 2013) (quoting *Rinks v. Hocking*, No. 1:10-cv-1102, 2011 WL 691242, *3 (W.D. Mich. Feb. 16, 2011)).

Defendants have offered nothing more than a bald assertion that "[m]ost of the witnesses are also physically located in the Western District." (R. 40, PID 465.) Defendants have not indicated who these witnesses are nor what their testimony would be. Nor have they offered evidence about why these witnesses would be inconvenienced by, for example, testifying in Detroit instead of Grand Rapids (or even Lansing or Kalamazoo). Absent any evidence supporting this factor, the Court is hard pressed to say it weighs in Defendants' favor. *See, e.g.*, *IFL Grp. Inc. v. World Wide Flight Serv., Inc.*, 306 F. Supp. 2d 709, 714 (E.D. Mich. 2004) (holding that "[m]ere assertions or speculation, without evidence, are insufficient to meet" a party's burden to show that transfer of venue is warranted); *Flagstar Bank*, 2013 WL 6017977, at *7 ("Since Gulfstream did not provide proof beyond conclusions that it would not have the relative means to travel to Michigan for trial, transfer does not weigh in favor of Florida."); *Thomas*, 131 F. Supp. 2d at 937 ("To establish these factors, parties should support their assertions with citations to the record; conclusory allegations of a party will not suffice[.]"). And

assuming that the key witnesses are simply the remaining Defendants who are parties to the case, as noted above, the convenience of the parties here does not strongly favor transfer.

*Sources of proof.* "[T]he location of documentary evidence is a minor consideration." *D'Amato*, 341 F. Supp. 2d at 751 (quoting *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999)). Moreover, "'modern photocopying technology and electronic storage deprive this issue of practical or legal weight.'" *Wayne Cty. Emps.' Retirement Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 390 (D. Conn. 2008)).

Defendants have offered nothing suggesting that keeping the case here will make it difficult for them to access relevant documents and other sources of proof. Much of the evidence in this case will understandably surround medical records that are already available to Plaintiff, as evidenced by the voluminous allegations in the complaint. As for other sources of proof, Defendants have urged that witnesses located in the Western District "should not be compelled to travel from Montcalm or Ingham County to the Eastern District of Michigan." (R. 40, PID 465.) But Defendants have not suggested that such limited intrastate travel will impact any party's access to sources of proof.

*Availability of process to compel attendance of witnesses and cost of obtaining willing witnesses.* Defendants have again offered nothing to suggest that a change of venue would make any difference under these two factors, so the Court finds neither factor to weigh in their favor.

*Practical difficulties with trying the case quickly and inexpensively.* Defendants make no argument as to this factor. The Court has no reason to believe that it would be quicker or less expensive for the parties to try the case in the Western District of Michigan.

*Interests of justice.* The thrust of Defendants' motion is that a transfer to the Western District would serve the interests of justice because Decedent spent most of the time relevant to this case incarcerated there. (R. 40, PID 464.)

The "locus of operative facts" is "an important factor in resolving a motion to transfer venue." *Wayne Cty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009).

As McLaren's brief notes, based on the allegations in the complaint, Decedent was in the Western District of Michigan for "97%" of the time relevant to this action. (R. 40, PID 464.) Still, the actions (or inactions ) relevant to Plaintiff's claims did begin in the Eastern District of Michigan, where Dr. Bhavsar initially noted Decedent's "palpable lymphnode" but allegedly failed to follow up. They ended in this district too, with Decedent ultimately passing away after spending time in two hospitals near Jackson, Michigan—allegedly after his providers there failed to respond appropriately to his deteriorating condition. Thus, while much of the time in between happened in the Western District (during Decedent's incarceration at CCCF and his brief hospitalization at McLaren), other significant moments in this case happened in this district.

At best, this factor weighs slightly in Defendants' favor. But it is the only one that does. Given the limited to non-existent showing Defendants have made as to the other factors, they have not met their burden of showing by a preponderance of the evidence that "fairness and practicality strongly favor" transferring this case to the Western District.

**III.**

For the foregoing reasons, Defendants' Motion to Change Venue (R. 40) is DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: June 14, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2017.

s/Keisha Jackson
Case Manager