## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN FRANKLIN, as Personal Representative
Of the ESTATE OF KEITH FRANKLIN,
Deceased,

       Plaintiff

Case No. 2:16-cv-13587
Hon. Laurie J. Michelson
Mag. Judge David R. Grand

-vs-

JANAK BHAVSAR, M.D.,

       Defendant.

---

| McKEEN AND ASSOCIATES, PC | CHAPMAN LAW GROUP |
|---|---|
| Kenneth D. Lee (P75886) | Jonathan Lanesky (P59740) |
| Attorney for Plaintiff | Attorney for Defendant Bhavsar, M.D. |
| 645 Griswold Street, Suite 4200 | 1441 West Long Lake Rd., Ste. 310 |
| Detroit, MI 48226 | Troy, MI 48098 |
| (313) 961-4400 | (248)644-6326 |
| klee@mckeenassocaites.com | Jlanesky@champmangroup.com |

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JANAK BHAVSAR, M.D.'S MOTION TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT, DAVIS MATHIS, M.D.

      NOW COMES Plaintiff, Karen Franklin, as Personal Representative of the

Estate of Keith Franklin, by and through her counsel, McKeen & Associates, P.C.,

and for Plaintiff's Response to Defendant Janak Bhavsar, M.D.'s Motion to Preclude

Plaintiff from Eliciting Expert Testimony from Plaintiff's Expert, Davis Mathis, M.D., states as follows:

1.  Plaintiff admits to paragraph one.

2.  Plaintiff admits to paragraph two with clarification. Fed. R. Evid. 702 has four listed criteria that must be satisfied for expert testimony to be admissible. The rule, with its four criteria, reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff makes this distinction to avoid any confusion as she will explain the admissibility of Dr. Mathis's expert opinions using the criteria of Fed. R. Evid. 702 as presented by the U.S. Government Publishing Office.

3.  Plaintiff admits to paragraph three.

4.  Plaintiff admits to paragraph four. By way of further answer, Plaintiff submits that the Defendant's motion, in attempting to strike the testimony of Plaintiff's sole expert on the issue of the care provided by the Defendant, amounts to a dispositive motion, which is filed untimely. Indeed, this Court previously ordered that dispositive motions, as well as any motion to challenge an expert witness, were to

McKeen & Associates, P.C.     645 Griswold Street, Suite 4200     Detroit, MI 48226     (313) 961-4400

be filed by August 20, 2018. Thus, the Defendant's motion is filed untimely and should be denied on that basis.

5. Plaintiff admits to the nature of Defendant's motion. However, it should be denied on the basis that it is untimely. Moreover, as will be explained in Plaintiff's brief, Dr. Mathis's expert opinions satisfy the requirements of Fed. R. Evid. 702 as they are reliable and supported by the facts in this case, and particularly the facts as contained in the medical records.

6. Plaintiff denies. Plaintiff has been unable to verify this information. Lack of knowledge.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court DENY Defendant's Motion to Preclude Plaintiff from Eliciting Expert Testimony from Plaintiff's Expert, Davis Mathis, M.D.

Respectfully submitted,

McKEEN & ASSOCIATES, P.C.

/s/ Kenneth D. Lee
KENNETH D. LEE (P75886)
Attorney for Plaintiff
645 Griswold St., Suite 4200
Dated: April 6, 2020                    Detroit, MI 48226

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KAREN FRANKLIN, as Personal Representative
Of the ESTATE OF KEITH FRANKLIN,
Deceased,

                                     Case No. 2:16-cv-13587

      Plaintiff                      Hon. Laurie J. Michelson
                                    Mag. Judge David R. Grand

-vs-

JANAK BHAVSAR, M.D.,

      Defendant.

---

McKEEN AND ASSOCIATES, PC      CHAPMAN LAW GROUP
Kenneth D. Lee (P75886)            Jonathan Lanesky (P59740)
Attorney for Plaintiff                  Attorney for Defendant Bhavsar, M.D.
645 Griswold Street, Suite 4200     1441 West Long Lake Rd., Ste. 310
Detroit, MI 48226                      Troy, MI 48098
(313) 961-4400                       (248)644-6326
klee@mckeenassocaites.com      Jlanesky@champmangroup.com

---

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JANAK BHAVSAR, M.D.'S MOTION TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT, DAVIS MATHIS, M.D.**

**PROOF OF SERVICE**

i

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES………………………………………………………iii

INDEX OF EXHIBITS……………………………………………………………iv

STATEMENTS OF ISSUES PRESENTED…………………………………………v

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT……vi

 I. STATEMENT OF FACTS………………………………………………1

  A. THE FACTS OF MR. FRANKLIN'S MEDICAL CARE…………...1

  B. DR. MATHIS'S EXPERT OPINIONS………………………………...3

   1.  EXPERT REPORT……………………………………………4

   2.  DEPOSITION TESTIMONY…………………………………6

  C. PROCEDURAL FACTS………………………………………………10

 II. LEGAL ARGUMENT…………………………………………………11

  A. DEFENDANT'S DISPOSITIVE MOTION IS UNTIMELY………11

  B. DR. MATHIS'S EXPERT OPINIONS ARE RELIABLE…………14

  C. DR. MATHIS'S OPINIONS ARE RELEVANT…………………...19

 III. CONCLUSION AND RELIEF REQUESTED………………………...20

McKeen & Associates, P.C. 645 Griswold Street, Suite 4200 Detroit, MI 48226 (313) 961-4400

# INDEX OF AUTHORITIES

## Cases

*Bourjaily v. United States*, 483 U.S. 171 (1987)…………………………………14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)……14, 15, 20

*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997)…………...16

*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)……………………………………………………14

## Rules

Fed. R. Civ. Pro. 16(b)(1)……………………………………………………12

Fed. R. Civ. Pro. 16(b)(3)……………………………………………………12

Fed. R. Civ. Pro. 16(b)(4)…………………………………………………12, 13

Fed. R. Evid. 401……………………………………………………………19

Fed. R. Evid. 402……………………………………………………………19

Fed. R. Evid. 702………………………………………………14, 15, 16, 17, 19

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

## <u>INDEX OF EXHIBITS</u>

**Exhibit 1**          **Mr. Franklin's MDOC Medical Records**

**Exhibit 2**          **Dr. Mathis Expert Report**

**Exhibit 3**          **Dr. Mathis Deposition Transcript**

**Exhibit 4**          **Case Management Requirements and Scheduling Order**

**Exhibit 5**          **October 11, 2017 Stipulated Order**

**Exhibit 6**          **January 10, 2018 Stipulated Order**

**Exhibit 7**          **April 23, 2018 Stipulated Order**

McKeen & Associates, P.C.          645 Griswold Street, Suite 4200          Detroit, MI 48226          (313) 961-4400

## <u>STATEMENTS OF ISSUES PRESENTED</u>

I.     SHOULD THE COURT PRECLUDE PLAINTIFF'S ONLY EXPERT
       DAVID MATHIS, M.D. FROM OFFERING EXPERT OPINIONS
       CONCERNING     CONSTITUTIONAL     VIOLATIONS     AND
       CAUSATION PURSUANT TO *DAUBERT* AND FED. R. EVID. 702
       WHEN DEFENDANT'S DISPOSITIVE MOTION WAS FILED 588
       DAYS AFTER THE COURT'S DEADLINE FOR FILING SUCH
       MOTIONS, AND LESS THAN THREE MONTHS BEFORE THE
       SCHEDULED TRIAL DATE?

       PLAINTIFF STATES:                    NO
       DEFENDANTS STATE:                    YES

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

v

## CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

Fed. R. Civ. Pro. 16(b)(1) states "Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order."

Furthermore, Fed. R. Civ. Pro. 16(b)(3) states what is required in a scheduling order. It provides, "**The scheduling order must limit the time to** join other parties, amend the pleadings, complete discovery, and **file motions**." (Emphasis added)

Fed. R. Civ. Pro. 16(b)(4) states, "A schedule may be modified only for **good cause and** with the **judge's consent**." (Emphasis added)

Fed. R. Evid. 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court is to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and Fed. R. Evid. 702

## I.     STATEMENT OF FACTS

### A. Mr. Franklin's Medical Care

This is a §1983 claim arising out of the deliberately indifferent medical treatment that Keith Franklin ("Mr. Franklin") received from Defendant Janak Bhavsar ("Defendant Bhavsar") while he was an inmate with the Michigan Department of Corrections ("MDOC"). The deliberately indifferent treatment resulted in an inexcusable delay in the diagnosis and treatment of Mr. Franklin's tonsillar cancer, which ultimately led to his death. The essence of the claim is that during an August 7, 2012 physical examination of Mr. Franklin, Defendant Bhavsar utterly ignored a potentially life-threatening yet treatable palpable lymph node mass that was on Mr. Franklin's neck. As a result, the mass was not addressed for more than 14 months, and by that time, it had developed to an advanced stage squamous cell cancer that ultimately led to Mr. Franklin's death.

The following facts outline the medical care that Mr. Franklin received from August 7, 2012 through February 10, 2014, when Mr. Franklin began treating with an oncologist. As this Court is aware, Mr. Franklin ultimately died from cancer in June of 2014. The purpose of these facts is to demonstrate that the lump on Mr. Franklin's neck that Defendant Bhavsar first saw on August 7, 2012 is *the same lump* that eventually took Mr. Franklin's life. These facts, as outlined in Mr. Franklin's

McKeen & Associates, P.C.     645 Griswold Street, Suite 4200     Detroit, MI 48226     (313) 961-4400

MDOC medical records, also serve as a key foundational piece for Dr. David Mathis's expert opinions.

On August 7, 2012, Defendant Bhavsar first evaluated Mr. Franklin. That day, he performed a full physical exam and noted the following in Mr. Franklin's medical record: "? palpable lymphnode 2-3cm below L angle of jaw." *See Exhibit 1, Mr. Franklin's MDOC Medical Records, p. 10 of 298.* Defendant Bhavsar took no action to treat or further evaluate the palpable node that day.

On August 21, 2012, Defendant Bhavsar saw Mr. Franklin again. That day, he performed no physical exam whatsoever, and failed to take any steps to reevaluate the palpable node which had been present two weeks previously. *Id. at p. 12-14 of 298*.

On October 9, 2013, Mr. Franklin was evaluated by Melissa Hearld, R.N. The record from that date show that she noted a large firm nodule on the right side of Mr. Franklin's neck. *Id. at p. 17 of 298.* The report goes on to state that Mr. Franklin told her that the nodule was evaluated a year ago and is now 5-6 time larger. *Id.*

On October 23, 2013, Mr. Franklin had a scheduled visit with Dr. Scott Holmes. During the visit Dr. Holmes noted the lump on the right side of Mr. Franklin's neck. *Id. at p. 20-22 of 298.* He told the doctor that the lump had been there for about 15 months and is getting bigger. *Id.* The doctor's plan was to have the suspicious neck mass further evaluated

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

On November 14, 2013, Mr. Franklin had a consultation with Virginia Beardslee, WPA so that a CT scan could be arranged. On that date Ms. Beardslee noted the lump on the right side of his neck and that further noted that it was first noticed about 15 months ago and is getting bigger. *Id. at p. 33 of 298.*

On December 13, 2013, Mr. Franklin was evaluated by Dr. Daniel Carrel DO so an appointment with an ENT could be scheduled. Dr. Carrel's notes indicate that Mr. Franklin first saw the mass 1 ½ years ago. *Id. at p. 46 of 298.*

On January 17, 2014, Mr. Franklin had another appointment with Dr. Carrel. During this appointment he told the doctor that he feels the mass is growing and is becoming painful when he opens his mouth. *Id. at p. 49 of 298.*

A letter dated February 10, 2014 from Dr. Greenberg indicates that the lump on the right side of Mr. Frederick's neck is worrisome for a primary malignancy *Id. at p. 53 of 298.*   This is the same lump that Dr. Bhavsar identified and that Mr. Franklin said had grown larger.

**B. Dr. Mathis's Expert Opinions.**

Dr. Mathis's expert opinions are based on the relevant facts and medical records. His report indicates, and he also testified that the discovery of the lump on Mr. Franklin's neck during the evaluation by Defendant Bhavsar on August 7, 2012 was a serious medical finding and that Defendant Bhavsar should have either treated or referred Mr. Franklin to a doctor who could treat him. Dr. Mathis has opined that

McKeen & Associates, P.C.     645 Griswold Street, Suite 4200     Detroit, MI 48226     (313) 961-4400

Defendant Bhavsar's failure to do anything about the mass on Mr. Franklin's neck constitutes deliberate indifference.

## 1. <u>Expert Report</u>

Dr. Mathis prepared an Expert Report for this matter dated February 22, 2018. *See Dr. Mathis Expert Report, attached as Exhibit 2.* The report thoroughly details his qualifications as an expert witness. For example, Dr. Mathis has continuously been board certified by the American Academy of Family Medicine since 1979. *Id. at p. 1.* From 1989 through 2010, he was an Associate Clinical Professor of Primary Care Medicine. His instructions to students included teaching them about the importance of physical examination findings, including solitary asymptomatic neck lymph nodes and how to manage those patients. *Id. at p. 1.*

Dr. Mathis's report also provides qualifications that are specific to treating patients in the department of corrections. He has over 20 years of experience in corrections as a provider, physician and medical director. *Id. at p. 2.* He is a Certified Correctional Healthcare Professional (CCHP) *Id.* He has worked in the Virginia, California, and Maryland Departments of Correction. *Id.* While working in Maryland, Dr. Mathis was the Medical Director for the Eastern Correctional Institution. *Id. at p. 2.* He worked directly with other Maryland Prison Medical Directors on state policies regarding inmate medical treatment and infectious disease protocols. *Id. at p. 2.*

McKeen & Associates, P.C.     645 Griswold Street, Suite 4200     Detroit, MI 48226     (313) 961-4400

After his contract expired in Maryland, Dr. Mathis was hired by the California Department of Corrections and Rehabilitation as a Physician and Surgeon for the California Medical Facility (CMF). *Id. at p. 3.* Dr. Mathis treats terminally ill patients at CMF, reviews their medical information and determines their level of care. *Id. at p. 3.* He is the primary care physician for approximately 500 inmates. *Id. at p. 4.*

Dr. Mathis has a working knowledge of InterQual. This is the decision-making software with criteria to determine whether specialty consultation, imaging, as well as surgery are indicated. *Id. at p. 4.* Both Michigan and California use InterQual as its decision support tool. *Id.* Additionally, Dr. Mathis is familiar with the Standards of the National Commission for Correctional Healthcare and the American Correctional Association. These standards, from national correctional organizations, were designed by the Michigan Department of Corrections as the standard for inmate health assessments. *Id. at p. 5.*

Dr. Mathis's Expert Report lays out his criticisms of Defendant Bhavsar's care and explains how Defendant Bhavsar's multiple failures in his treatment of Mr. Franklin amount to deliberate indifference and thus, a violation of Mr. Franklin's constitutional rights. *Some* of his criticisms include not treating or referring Mr. Franklin for the lymph node that was discovered on August 7, 2012 *Id. at pp. 15 and 19*, not properly documenting the lymph node and not telling Mr. Franklin that the

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

palpable lymphnode could possibly be cancerous *Id. at p. 16*, not reporting that he touched Mr. Franklin during the examination *Id. at p.* 17, and not referring Mr. Franklin to an ENT for a CT scan or an MRI as required under the InterQual criteria that Corizon was contracted to use. *Id. at p. 18.*

### 2. Deposition Testimony

On April 9, 2018, Dr. Mathis gave a deposition in this case. His testimony was taken 133 days before the August 20, 2018 date in which any dispositive motions or motions to challenge an expert witness were to be filed.

During his deposition, he provided the appropriate foundation for all of the expert opinions he would share, beginning with basic information regarding his qualifications. For example, he is a physician and surgeon for the California Department of Corrections. *See Exhibit 3, Dr. Mathis deposition, p. 9:6-15.* Importantly, he testified that his <u>training and experience as a hospice physician had allowed him to treat new patients with cancer for at least 80 times the past three years</u>. *Id. at 124:1-4.* At the time of his deposition, he testified that he was responsible for a 17-patient hospice. *Id. at 9:23-10:4*

Dr. Mathis also provided testimony regarding what he reviewed from the case to help form his expert opinions. He reviewed the medical records and Dr. Greenberg's pathology report. *Id. at 29:11-16, 49:2-4.* Some of the depositions that Dr. Mathis reviewed are Defendant Bhavsar's and Dr. Carrel's *Id. at 70:2-4, 58:13-*

*14.* His understanding of the medicine and facts are reflected in the report's detailed summary of the events. ***Exhibit 2, Dr. Mathis Expert Report.*** Dr. Mathis also consulted relevant literature for this case. Regarding the InterQual 2014 decision making tool that Corizon was contracted to use, he reviewed CT neck imaging, MRI imaging of the neck with and without contrast, lymph nodes and cancer, and the causes and symptoms of swollen lymph nodes. ***Exhibit 3, Dr. Mathis deposition, p. 31:3-11*** He testified that he is very familiar with the medical processes of the Michigan Department of Corrections ***Id. at 38:22-24*** and also noted that he researched the Carson City correctional facility and its medical facility. ***Id. at 41:10-42:2***

Using his expertise and experience, Dr. Mathis testified that the palpable lymph node that Defendant Bhavsar identified on August 7, 2012 was a serious medical condition. Part of the foundation for that opinion is based on the InterQual software. He testified as follows:

> Q: Okay. On 8-7-2012 – not knowing any information that occurred after 8-7-2012, but on 8-7-2012, what is it about a palpable lymph nod that's two or three centimeters below the left angle of the jaw that makes it a serious medical need?
>
> *Objection from counsel…*
>
> A: Franklin was over 40. He was a tobacco and alcohol user, and it was a painless mass. So under those circumstances, it was a serious or potentially serious medical condition.

7

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

In the state of Michigan, because they're under contract to use InterQual, it satisfies all the criteria that are necessary in order to do advanced imaging. ***Id. at 67:10-17***

Dr. Mathis's expert opinion is that on August 7, 2012, when Defendant Bhavsar first identified what he believed to be a palpable lymph node, that Mr. Franklin had cancer. Dr. Mathis would later explain that his education and training gave him the knowledge that, left undiagnosed and untreated, cancer will continue to grow unabated, and that is what happened in this case. ***Id. at 91:1-4.*** The following excerpts demonstrate that Dr. Mathis based his expert opinions on his training and expertise, and also address Dr. Mathis's experience in right vs. left charting errors, which are common in the practice of medicine:

Q: Is it your opinion that on 8-7-2012 that Mr. Franklin had cancer?

A: Yes.

Q: What do you base that opinion on?

A: I base that opinion on that -- Franklin was actually told by Dr. Bhavsar that he had a mass there. He followed that mass himself and didn't present again until he had pain. He had it evaluated in August and said it was five or six times larger. So he was following it personally.

He said that he hadn't asked for treatment because he was concerned it would hold up his parole.

We're talking right or left now, really, because that is the crux of your case.

Dr. Holmes on 11-20-13 said that the mass was on the left when he was putting in for a CT scan. Right and left errors are common in medicine. Most people know that nurses label the correct limb when one goes to surgery because it's not rare for the wrong appendage to be operated on – Dr. Bomber, the regional medical executive, said that of course it happens, right versus left errors.

Dr. Holmes in his CT request said that it was on the left side.

It's my opinion as an experienced board- certified family physician that it's medically certain that this abnormality, the mass, lymph node detected by Bhavsar, was the sentinel finding for Franklin's squamous cell carcinoma. *Id. at 69:2-6*

Q:  What scientific evidence do you base that opinion on?

**A.        I'm basing it on my training and experience. *Id. at 68: 3-25, 69: 1-14***

When pressed to summarize his opinions with respect to the care provided by Defendant Bhavsar, Dr. Mathis state the following:

Q:  Could you summarize for me your opinions with respect to Dr. Bhavsar? And understand for the record you have a report. I'm asking if you can summarize it.

A:  Thank you for allowing that. The report talks about it in detail.

Q:  I understand that. For all of your opinions. I'm asking you to summarize them.

A:  Basically, Bhavsar found something but didn't describe it. He found something but didn't do a more complete physical examination. He found something and didn't follow up on it. He found something and – the most grievous thing was not following

McKeen & Associates, P.C.      645 Griswold Street, Suite 4200      Detroit, MI 48226      (313) 961-4400

up on it, not examining it at another time. Had he done that, then Franklin would have had the possibility of a cure.

I find fault with Bhavsar's second-year medical student description of a mass or a lymph node, the location, the abbreviation that he put down as L and what that meant.

Corizon had difficulty with the letter L, too, because they won't allow it as an abbreviation, understanding that it might be fraught with error.

I believe that Bhavsar didn't examine the tonsils. I believe that Bhavsar had no idea of the importance of this mass with someone given the age and the history of Mr. Franklin.

I believe as a result of – it's my opinion – it's not just my belief. It's my opinion that had Dr. Bhavsar performed an examination that a prudent physician would have done at that time, he would have looked into this himself or referred it to someone who knew how to do it.

I believe that he had a duty to refer Franklin for further evaluation, imaging. The State of Michigan contractually required imaging to be done. InterQual was used and demonstrates clearly that Franklin was in a high-risk group.

It's my opinion that had Bhavsar followed the standard of care and appropriately evaluated Franklin, that he could have been diagnosed at an early curable stage, but instead, he chose not to follow up even on his inadequate examination. There was no intellectual curiosity. There was no evidence of duty. There was no responsibility, and he didn't do what a prudent physician would do in a similar circumstance. *Id. at 86: 12-25, 87: 1-25 and 88: 1-9*.

## C. Procedural Facts.

A few basic procedural facts focusing on the Court's Scheduling Order and its deadline for the filing of dispositive motions should be mentioned. The Court

issued its original scheduling order on February 21, 2017. That Order set a February 19, 2018 deadline for when dispositive motions were to be filed. ***Exhibit 4, Case Management Requirements and Scheduling Order*** Subsequently, the dispositive motion deadline was modified several times. On October 11, 2017, the Court extended the deadline for dispositive motions to March 19, 2018. ***Exhibit 5, October 11, 2017 Stipulated Order*** Then on January 10, 2018, the Court extended the deadline to May 24, 2018. ***Exhibit 6, January 10, 2018 Stipulated Order*** Finally, on April 23, 2018, it was extended to August 20, 2018. ***Exhibit 7, April 23, 2018 Stipulated Order.*** The Order specifically states: "The dispositive motion deadline and deadline to challenge experts are extended to August 20, 2018."

Defendant's motion, which essentially amounts to a dispositive motion, and is unequivocally a motion to challenge an expert, was filed on March 30, 2020. That is 588 days after the Court's mandatory deadline, thus, it should be denied on the basis of its untimeliness alone.

## II.   <u>LEGAL ARGUMENT</u>

### A. <u>Defendant's Motion is Essentially a Dispositive Motion, which is Untimely.</u>

Defendant's present motion is dispositive because it seeks to preclude Plaintiff's only retained expert on the subject of whether Defendant Bhavsar's conduct rises to the level of deliberate indifference from giving expert opinions. Granting Defendant's motion would therefore result in a dismissal of the action.

Defendant is seeking dismissal of this matter by means that have been precluded by the Court for over a year and a half. The motion should be denied on that basis alone.

The Federal Rules of Civil Procedure mandate the Courts to issue a scheduling order.   Fed. R. Civ. Pro. 16(b)(1). These scheduling orders ensure that an action proceeds in a predictable and timely manner and discourages wasteful pretrial activities and gamesmanship. Fed. R. Civ. Pro. 16(b)(3) further requires that the scheduling order limit the time in which parties may file motions. <u>A scheduling order may be modified only for good cause and with the judge's consent</u>. Fed. R. Civ. Pro. 16(b)(4).

The time limits that are required by the Federal Rules are relied upon by the parties and this reliance dictates the parties' actions throughout the life of the case. The rules within Fed. R. Civ. Pro. 16 were created for very good reasons.  Disregard for these time limits by one party will likely result in prejudice to the other party that managed its affairs in accordance with the Court's mandatory deadlines. This is not to say that these time limits may not be modified, but they must be modified in a specific manner. That is, there must first be good cause for the modification, and it may only be modified with the judge's consent.

The repeated modifications of the dispositive motion deadline in this case are important for at least three reasons. First, they are proof that the Court has given the parties ample opportunities to file any dispositive motions they may have. Dr.

Mathis's discovery deposition was taken on April 8, 2018. Defendant had until August 20, 2018 to file a motion challenging Dr. Mathis, but chose not to. And on that note, it should be noted that Defendant Bhavsar did in fact file a dispositive motion, but again, did not challenge Dr. Mathis's qualifications within that motion. Second, the repeated modifications show that the Court has not extended the deadline by more than five months at a time. Defendant's dispositive motion has been filed approximately nineteen (19) months after the final deadline was set. This is a major diversion from the 4 or 5-month extensions that the Court routinely permitted. Finally, the repeated modifications show that the moving party, Defendant, knew that it needed this Court's consent to extend the scheduling order deadline.

In addition to the above reasons for a denial, the Defendant's motion should be denied because the Defendant never provided good cause for why the Court should consider its untimely motion and the Court never consented to an extension of the deadline before Defendants' motion was filed. To modify a deadline, good cause and consent are required under Fed. R. Civ. Pro. 16(b)(4). Plaintiff has diligently litigated and prepared this matter for trial relying on the Court's scheduling order. For example, Plaintiff's counsel did not pursue other expert witnesses because the deadline for striking experts had passed and counsel was satisfied with the qualifications and expert opinions of Dr. Mathis. Plaintiff had no

reason to develop another plan regarding Dr. Mathis. A scheduling order is designed to make the legal process predictable and fair. Granting Defendant's motion would be equivalent to putting the party that relied on the Court's timeline at a clear disadvantage. The disadvantage is more severe given the proximity of the scheduled June trial. This result would be illogical and inconsistent with the fair-minded spirit of the Federal Rules of Civil Procedure. Defendant's untimely motion should be denied.

**B. Dr. Mathis's Expert Opinions are Reliable.**

Trial courts are the gatekeepers of scientific evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993) Their role is to ensure that medical expert opinions are supported by science and are reliable. "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's notes (2000 amendment). "The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). The proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171 (1987). Fed. R. Evid. 702, which guides the Court in its gatekeeper endeavor, reads as follows:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Experience alone may provide a foundation for expert testimony. Fed. R. Evid. 702, advisory committee's notes (2000 amendment). "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Id.* (emphasis added)

The Supreme Court set forth factors that may be considered when determining whether a methodology is valid, or reliable. Those factors are: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance with in a relevant scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993)

Dr. Mathis's opinions are reliable under Fed. R. Evid. 702. First, his specialized knowledge will assist the trier of fact in determining whether Defendant Bhasvar's care violated Mr. Franklin's constitutional rights. He has extensive

experience in treating patients and working within correctional systems. Not only does he have extensive experience working with patients that are in the correctional system, he has helped shape policies for how these patients are cared for within these systems. He has a working knowledge of the InterQual decision-making software that the Michigan Department of Corrections (MDOC) is required to use to determine whether a patient needs any special medical care. ***Exhibit 2, Dr. Mathis Expert Report, p. 4, Exhibit 3, Dr. Mathis Deposition, 67:10-17***

His knowledge of the InterQual software is a perfect example of how Dr. Mathis's specialized knowledge will assist the trier of fact. This is the very software that MDOC is contracted to use when caring for its patients. Dr. Mathis may use the software and its concepts to help the jury understand what decisions Defendant Bhasvar should have made while treating Mr. Franklin and why. This will undoubtedly assist the trier of fact.

Second, Dr. Mathis's opinions are reliable under Fed. R. Evid. 702 because they are based on sufficient facts and data. He reviewed all the pertinent medical records and other witness's deposition testimony. He also reviewed literature pertaining to "InterQual 2014, the Michigan legislature section 791.235, Michigan code 1953 at 232 of 1953 files, Michigan legislature 791.235, medical parole files." In other words, Dr. Mathis came to his deposition prepared.  While Dr. Mathis has used literature to support his position, the Court in *Kannankeril v. Terminix Int'l,*

*Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) held that a lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge".

Dr. Mathis's testimony is the product of reliable principles and methods, satisfying the third element of Fed. R. Evid. 702. Again, his testimony regarding the InterQual software may be used again to establish this element. Doctors treating patients in the correctional system will rely on the software when treating a patient. The principle used by the doctor is that the software will reliably guide the doctor in treating the patient so that the treatment meets the standard of care and the patient is cared for appropriately. The *method* used by Dr. Mathis is the application of the his extensive experience to analyze the meaning of the software's instruction and to carry it out. This is a simple, yet effective example of how Dr. Mathis's testimony is the product of reliable principles and methods.

Finally, to satisfy the fourth element of Fed. R. Evid. 702, Dr. Mathis reliably applied the principles and methods to the facts of this case. Again, Plaintiff will refer to the InterQual software to keep her analysis consistent. Dr. Mathis believed the mass on Mr. Franklin's neck, when first discovered by Dr. Bhavsar, was a serious medical condition. He arrived at that conclusion by considering the criteria used by InterQual and applying those criteria to the facts of the case, particularly the information relating to Defendant Bhavsar's treatment of Mr. Franklin on August 7

and August 21, 2012 to form this opinion. The criteria included the fact that Mr.

Franklin had certain risk factors for cancer like his age, the fact that his past medical

history included the use of tobacco and alcohol, and the fact that the mass was

painless. ***Exhibit 3, Dr. Mathis Deposition, 67:10-17***

Mr. Franklin's medical records following the August 21, 2012 evaluation by

Defendant Bhavsar also provide an example of Dr. Mathis reliably applying the

principles and methods to the facts of the case. Indeed, after that visit, when he was

seen by other healthcare providers to evaluate the mass, but before he was diagnosed

with cancer, Mr. Franklin told numerous other healthcare providers that the mass

they were evaluating was the same one that was initially discovered by Defendant

Bhavsar. This fact is well documented in a number of Mr. Franklin's MDOC medical

records, including but not limited to the following:

- October 9, 2013 evaluation by Melissa Hearld, RN
- October 23, 2013 evaluation by Dr. Scott Holmes
- November 14, 2013 evaluation by Virginia Beardslee, WPA
- December 13, 2013 evaluation by Dr. Danie Carrel
- January 17, 2013 evaluation by Dr. Daniel Carrel
- February 10, 2014 letter from Dr. Jayson Greenberg

Mr. Franklin also indicated that the mass had been growing. These visits are

outlined in the facts above. Dr. Mathis's opinion is that Mr. Franklin's cancer was

present during the August 7, 2012 visit with Defendant Bhavsar.

In summary, Dr. Mathis based all of his opinions on the facts of the case as

outlined in Mr. Franklin's medical records, along his vast education, training, and

experience in treating patients in the correctional setting, and then reliably applied those facts, his education, training and experience, in a way that will assist the trier of fact in understanding the issues that are presented in this case.

For all of the above reasons, Dr. Mathis's expert opinions satisfy the requirements of Fed. R. Evid. 702 and therefore are reliable.

### C. Dr. Mathis's Expert Opinions are Relevant.

Clearly, Dr. Mathis's expert opinions satisfy federal requirements of reliability. Therefore, his testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. Fed. R. Evid. 702. Defendant's argument that Dr. Mathis cannot offer any insight beyond what Plaintiff's attorney will or could argue in their closing is grossly inaccurate. A couple examples will prove the point, but there are many. Plaintiff's attorney cannot say, without expert testimony, why it was that Mr. Franklin was at an advanced risk to develop cancer with a palpable mass on his neck, what a reasonably prudent physician would do when evaluating and treating such a mass, and what types of treatment options were available and required for such a mass. It is also safe to assume that Plaintiff's counsel cannot educate the trier of fact on InterQual, the decision-making software, and how its recommendations are carried out.  Dr. Mathis's testimony is relevant and admissible under Fed. R. Evid. 401 and 402, therefore, Defendant's motion should be denied.

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

### III.   CONCLUSION AND RELIEF REQUESTED

Defendants' untimely dispositive motion should be denied on the basis that it was filed 588 days after the Court's mandatory deadline.

Dr. Mathis's expert testimony is reliable and relevant.  Dr. Mathis does not merely make conclusory statements, rather he develops expert opinions in a reliable manner that is supported by the facts and data from the case. It is telling that Defendants' Motion and Brief never even mentions the InterQual decision-making software that Dr. Mathis relied on to form his opinions and that undoubtedly satisfy the *Daubert* requirements.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court DENY Defendant's Motion to Preclude Plaintiff from Eliciting Expert Testimony from Plaintiff's Expert, Davis Mathis, M.D.

/s/ Kenneth D. Lee
KENNETH D. LEE (P75886)
Attorney for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

Dated: April 6, 2020

### PROOF OF SERVICE

I hereby certify that on April 6, 2020 I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Post Service the document to the involved non participants.

/s/ Kenneth D. Lee